Bestor *v.* Walker *et al.*

GEORGE C. BESTOR, plaintiff in error, *v.* ISAAC WALKER *et al.*, defendants in error.

*Error to Peoria.*

. In order to render the assignor of a promissory note liable, the assignee must not only institute and prosecute his suit to judgment at the earliest practicable time, but he must enforce that judgment by execution as soon as he can by ordinary diligence. He will, however, be excused from suing out execution, when such process would prove wholly unavailing. If a suit were necessary at the maturity of the note, but insolvency should intervene between the commencement thereof and judgment, that fact should be alleged in the declaration, to excuse from the issuing of execution.

The assignee of a promissory note should use due diligence to collect the amount of it from the maker in the county of the maker's residence, if such residence is known to him. If, however, such place of residence is wholly unknown to the assignee, he may elect to consider as the place of the maker's residence, the county where the note was executed, if he be found there for purposes of the service of process upon him, returnable to the first term of Court held in such county after the maturity of the note; or perhaps to a subsequent term, if, in the mean time, diligent but unsuccessful effort has been made to ascertain his place of residence.

The assignee of a promissory note must not only institute a suit against the maker at the first term, but he must also obtain a judgment at that term, and if he does not thus obtain a judgment, it must not be the result of his negligence.

In an action brought by the assignee of a note against the assignor, it is not necessary to prove its execution by the maker.

ASSUMPSIT, in the Peoria Circuit Court, brought by the defendants in error against the plaintiff in error as assignor of a promissory note. The cause was heard before the Hon. John D. Caton and a jury, at the May term 1845, when a verdict was rendered in favor of the plaintiffs for $249. Upon this verdict judgment was entered.

The material facts in the case as proved in the Court below, and the pleadings and instructions given by that Court, are set forth in the Opinion.

*O. Peters,* for the plaintiff in error.

I. In a suit by an indorsee of a promissory note against the indorser, the note is not admissible in evidence without proof of the handwriting of the maker.

The maker of the note stands to the other parties, like the acceptor of a bill of exchange to drawer and indorser. And in a suit by the holder of a bill against the acceptor, the hand-writing of the indorser must be proved. *Robinson* v. *Yarrow*, 2 Eng. Com. Law R. 173; *Smith* v. *Chester*, 1 Term Rep. 656. This rule of the common law is not altered by our statutes.

The fourteenth section of the Practice Act, (Rev. Stat. 415,) only provides that the execution of the instrument shall not be denied, when the action is brought *upon the instrument.*

Here, the action is not brought upon the instrument, *i. e.* the note, but upon the *indorsement:* if defendant does not deny the *indorsement* under oath, he cannot, by reason of this statute, put it in issue. Nor does the 59th section, (Rev. Stat. 421,) apply. That only applies to actions upon notes, &c. when brought by the assignee.

II. The instructions of the Circuit Court to the jury were erroneous.

The first and third instructions are substantially alike, viz, that to charge an indorser, it is not necessary that the execution should be sent into any county, except where the judgment was rendered. The proposition is stated in broad terms, and without restriction or limitation.

In many cases, the original process is sent, and may rightfully be sent, into a foreign county, and served on the maker of the note resident there. In all these cases, an indorser would be charged on return of the execution *nulla bona,* though the maker were worth his thousands.

The undertaking of an indorser is conditional, viz. that he will pay the note if the maker does not, provided the indorsee uses due diligence.

Our statute determines and defines what due diligence is, viz. the prosecution of a suit against the maker, unless he be insolvent, so that the suit would be unavailing. Rev. Stat. 385, §7.

Would it be a good declaration in a suit by indorsee against indorser, to allege that the defendant (indorser) re-

sided out of the county of the plaintiff, where the cause of action accrued, and that he (indorser) had no property in the county of the plaintiff. This would hardly be contended, and yet if these instructions be correct, such a declaration would be good. For diligence implies something more than the recovery of a judgment. The remedy must be pursued by execution.

Diligence is a mixed question of law and fact. It is put in issue by plea. *Campbell* v. *Hobson*, 1 A. K. Marsh. 229.

The indorsee must be as diligent as a man ordinarily is in his own business. *Young* v. *Crosby*, 3 Bibb, 227. Is proof that the maker has no property in the county, *conclusive evidence* of insolvency, so as to *preclude* the indorser from showing the solvency?

III. The Court erred in overruling the motion for a new trial.

The evidence shows that too much time elapsed between the rendition of the judgment, and the suing out of execution.

Execution was delayed eighty four days, and no good excuse is shown for the delay.

In Kentucky, a delay of three months is an absolute discharge of the indorser. *Trimble* v. *Webb*, 1 Monroe, 103; *Johnson* v. *Lewis*, 1 Dana, 184.

Is permitting eighty four days to elapse, using such diligence as a prudent man would use ordinarily in his own business?

So, if the maker remove from the Circuit where the holder lives, it will not excuse him for not using diligence. *Spratt* v. *McKinney*, 1 Bibb, 595; *Smallwood* v. *Woods*, Ibid. 546; *Hogan* v. *Vance*, 2 do. 34–5; *Thomas* v. *Taylor*, 2 J. J. Marsh. 216; *Saunders* v. *O'Briant*, 2 Scam. 370; *Bledsoe* v. *Graves*, 4 do. 384–5.

Mr. Powell testified that he thought it might be best for all parties to delay suing out execution. He was the attorney and agent of the plaintiffs below, and he must judge at his peril.

By the law merchant, and under the statute of Anne, dili-

gence consists in making a demand and giving notice. This could not ordinarily be dispensed with, even though the acceptor of the bill, or maker of the note be insolvent. Bailey on Bills, 196; *Smith* v. *Becket,* 13 East, 187; *Hodges* v. *Galt,* 8 Pick. 251; 3 Kent's Com. 100.

Absolute insolvency, or absconding from the State only, will excuse institution of suit, and pursuing the remedy by execution.

As the attorneys of the plaintiffs knew the residence of Law to be in Adams county, they should have sued out execution and sent it there.

As the event has shown that Law had property there, as well as in other counties, he should have been pursued there and the money would have been made

IV. The second instruction, that if the plaintiffs below did not know that Law had property, the jury would find for them, is so palpably erroneous, as hardly to need argument to show it.

This is probably the first time it has been adjudged that ignorance, and that too not improbably willful ignorance, excused a party from the fulfillment of his contract, and released him from his legal obligations.

Non-resident plaintiffs rarely know whether the makers of notes residing here, have property or not; and yet if this instruction be correct, it will excuse them from the diligence required by the statute to charge indorsers.

V. The Circuit Court erred in excluding the evidence offered by the defendant below.

The title deeds. Evidence that Law had title deeds to land and good titles, was competent inasmuch as the question comes up collaterally. It was such evidence as would authorize the jury to infer that Law was not insolvent.

So, that Law dealt in good titles, was competent, as it would be to show a, merchant's credit that he had title to his stock of goods.

So, also, it was proper to show that he inherited lands from his ancestor. Bestor could not control and procure the deeds of the ancestor.

So, the evidence showing that Law sold lands to Mr. Pom-mey was competent, because it shows that he had funds, out of which he could have paid the judgment.

Reputation was also proper, as to Law's property. A reputation that a man has wealth, is all that can, in most cases, be proved. Inventories of his property could not be produced. His apparent condition, his reputation as to property, was a fact proper for the consideration of the jury.

Finally, it was abundantly shown that Law had most ample means of paying the judgment against him. A prudent man would have sought it out. An ordinarily vigilant man would have found it. And there is no excuse for the plaintiffs below, in not having obtained satisfaction of their execution.

*E. N. Powell,* for the defendants in error, relied upon the following points and authorities:

1. The declaration in this case contains three counts, besides the common counts. The first count shows due diligence by suit against the maker at the first term of Court after the note became due, and execution issued to Peoria county, and returned by the sheriff, *nulla bona.* The second avers the insolvency of the maker at the time the note became due, and at the time the suit was brought against the assignor. The third count is the same as the first, except that two executions were issued, one to Peoria, and the other to Knox county, and the return of *nulla bona* on both.

2. The evidence, as contained in the bill of exceptions, fully sustains the verdict of the jury, and the jury having passed upon the evidence, the Court will not disturb their verdict, unless it most manifestly appears that the jury have misconceived the evidence, and that their finding is flagrantly against the weight of evidence. *Smith* v. *Shultz,* 1 Scam. 490; *Lowry* v. *Orr,* 1 Gilm. 70, and cases cited by counsel; *Johnson* v. *Moulton,* 1 Scam. 532.

3. Due diligence by the institution and prosecution of a suit against the maker, is shown by the return of an execution, *nulla bona,* issued upon a judgment against the maker at the first term of the Court after the note matured. The

return of *nulla bona*, to an execution issued upon a judgment rendered upon an assigned note, is evidence of the insolvency of the maker. *Cowles* v. *Litchfield*, 2 Scam. 356; *Raplee* v. *Morgan*, Ibid. 561.

4. The first instruction given, was correct. The assignee of a note is not bound to issue execution to any other county than the one where the judgment was obtained, unless it be shown that he knew of property in some other county, liable to execution. He *is* only bound to issue execution to the county where the suit was commenced. *Cowles* v. *Litchfield*, 2 Scam. 356; *Saunders* v. *O'Briant*, Ibid. 369.

Without the assignee having knowledge of property in some other county than the one where he brought his suit, surely it cannot be required of him that he shall issue executions into every county in the State, and prove the same returned *nulla bona*, in order to charge the assignor. The return of *nulla bona* is sufficient.

5. The assignee has done all that is required of him, if he has used all the means in his power, in the county where he sues. *Saunders* v. *O'Briant*, 2 Scam. 369. And if diligent search for property was made in the county where suit was instituted, that is sufficient.

6. When an execution is issued to a sheriff, on a judgment rendered upon an assigned note, he becomes the sworn agent of the assignor and assignee, and his return of *nulla bona* to such execution is conclusive evidence that the maker had no property liable to execution within his county, and *prima facie* evidence of none in the State, and unless the fact of the maker having property be brought home to the assignee, he is not bound to search for property out of the county where judgment is rendered. 2 Scam. 356, 369, before cited.

7. A sufficient excuse is given for not issuing execution at an earlier day, as it is very clearly shown that the maker of the note had no property in the county, between the rendition of the judgment and the issuing of execution.

8. The evidence to the jury was sufficient to warrant their finding under the second count, as the insolvency of the

maker is pretty clearly made out, and the jury having passed upon the whole of the evidence, and not being misled by the instructions given by the Court, their verdict ought not to be disturbed.

The Opinion of the Court was delivered by

THOMAS, J.* This case brings before us for revision, a judgment of the Circuit Court of Peoria county, in favor of defendants in error as indorsees, against plaintiff in error as indorser of a promissory note.

The plaintiff in error, claiming a reversal of that judgment for errors alleged to exist in the opinions of the Court below, on questions made during the progress of the trial, in his assignment of errors, now assumes that the Court erred

I. In its instructions to the jury;

II. In permitting the note to be read in evidence to the jury;

III. In permitting improper evidence to be given to the jury;

IV. In overruling the motion for a new trial;—and

V. In excluding evidence offered by the defendant below.

For the proper understanding and investigation of the questions presented by this assignment of errors, reference to the pleadings and evidence of the parties here becomes necessary: I proceed to make it.

The plaintiffs below base their right of recovery, as well upon the ground of diligence by suit on their part against the maker, as upon that of his insolvency.

The first and third counts of their declaration, exhibit the alleged proceedings relied upon by them, as constituting diligence sufficient to charge the indorser. The following are the material allegations in those counts, viz:

First count. 1. The execution on the 15th of Sept. 1841, at Peoria county, by one Edmund Law, of his promissory note for $200, to the defendant, (Bestor,) payable on the 25th Dec. 1842, with interest at 6 per cent., per annum.

---

*PURPLE, J. having been of counsel in this case, took no part in the decision.

2. The assignment of said note, by indorsement thereon in writing, by said defendant to one Isaac Underhill, and by said Underhill to plaintiff.

3. The institution and prosecution of a suit on said note, by plaintiffs, against said Law, to the first term of the Circuit Court of said county of Peoria, held after said note became due, to wit, at the May term, A. D. 1843.

4. The recovery of a judgment in said suit, by plaintiffs, against said Law, during said term, to wit: on the 7th June, 1843, for the sum of $232·77 damages, and $7·18¾ costs.

5. The issuing of a *fi. fa.* on said judgment, on the 30th day of August, A. D. 1843, directed to the sheriff of said county of Peoria for execution, that it came to the hands of said sheriff on the same day, and on the 27th Nov. 1843, was returned by him, *nulla bona* and unsatisfied.

In addition to the allegations of the first count, the third count avers

1. The issuing of an *alias fi. fa.* on said judgment on the 11th day of April, 1844, directed to the sheriff of the aforesaid county of Peoria for execution; its delivery to said sheriff on the 17th day of said month of April, and its return by him, July 8th, 1844, *nulla bona* and unsatisfied.

2. The issuing of a *pluries fi. fa.* on the 12th of August, 1844, directed to the sheriff of Knox county for execution; its reception by said sheriff of Knox county on the 15th of said month of August; and its return by him, November 9th, 1844, *nulla bona* and unsatisfied.

The second count avers the insolvency of said Law, and his inability to pay said note or any part of it when it became due and payable, and from thence to the commencement of the suit against him; and that the institution and prosecution of a suit against him, at and during such time, would have been wholly unavailing, &c.

The fourth and only remaining count is the common money count.

The defendant, by his plea of the general issue, put the plaintiffs upon proof of their several allegations; the jury impanneled to try the issue, found for the plaintiffs, assessed

Bestor *v.* Walker *et al.*

their damages at $249, and the Court, overruling defendant's motion for a new trial, rendered judgment on the verdict. The defendant excepted to the opinion of the Court, and as has been already shown, now assigns it for error.

We are thus called upon to determine as to the sufficiency of the plaintiffs' proof to sustain their allegations, and charge the defendant as their indorser. This is the principal inquiry presented by the record, involving as it does, the plaintiffs' right of recovery in any event, and its solution will dispose of every other question in the case, except that of the admissibility of a portion of the plaintiffs' evidence, arising upon the first assignment of errors. It, therefore, first demands investigation.

First, then, as to the sufficiency of the proof to show such diligence by suit on the part of the indorsees against the maker as to charge the indorser. If proof of the allegations of the first and third counts will suffice for that purpose, there can be no doubt of the plaintiffs' right of recovery on that ground. Those allegations are in all respects, not only substantially, but literally proved. The execution and indorsement of the note; suit thereon by plaintiffs against the maker; judgment in such suit; executions on such judgment; and sheriff's returns on such executions, are all shown by plaintiffs' evidence (as embodied in the bill of exceptions,) precisely, in dates, amounts and every other particular, as alleged by them, consequently as the defendant by pleading to those counts admits their legal sufficiency to subject him to plaintiffs' suit, it would seem to be a work of supererogation to proceed with further inquiry on this branch of the subject. But the course taken on argument forbids that the investigation should close here. And moreover, there is perhaps some doubt whether there is not such a defect in the first and third counts as might be fatal on error, (were they the only counts in the declaration, or the other counts unsustained by proof,) in this, that they show so long a time to have intervened between the judgment and the first execution issued thereon. In this respect, the plaintiffs' allegations certainly do not show due diligence. For the purpose of reaching the indorser, the holder is re-

quired not only to institute and prosecute his suit to judgment at the earliest practicable time, but also to enforce that judgment by execution, as soon as by ordinary diligence he can. It is true that he will be excused from suing out any execution at all, when such process would prove wholly unavailing, precisely as for the same reason he would be excused from commencing suit. But in such case, where the pecuniary responsibility of the maker of the note when it matures, renders suit against him necessary for the purpose of preserving the guaranty of the indorser, but his subsequent insolvency, when judgment is rendered, would render every attempt to collect the money of him wholly unavailing, that fact should be alleged in the declaration to excuse from the issuing of execution, just as it should be to excuse from suing, if it had existed when the note became due. If in any such case it appear from the declaration, that the time intervening between the judgment and the execution be so great as to show clearly that the delay in the emanation of such process is the result of the plaintiffs' negligence, and the declaration contains no matter of excuse for such neglect, the declaration must be held bad on demurrer. Such is perhaps the character of the case under consideration. But, be this as it may, there is not and cannot be, any valid objection to the second count, and that, too, is fully sustained by proof if the unavailability of suit against Law (the maker of the note,) in Peoria county is sufficient to charge the indorser. It is fully proved that the said Law had no property whatever in that county, either when the note became due, or at any subsequent time. Consequently the plaintiffs were excused, so far as that county was concerned, not only from suing out execution on their judgment before they did so, but also from commencing their suit. But it remains to be determined whether the institution and prosecution of a suit against the maker in that county, or the fact that such proceedings would have been wholly unavailing there, would operate under the circumstances of the case to fix liability upon the indorser, or whether he is discharged by the neglect of the plaintiffs, either to institute and prosecute suit

in, or send execution to some other county or counties. The defendant proves that Law had property in other counties out of which the money might probably have been made, and insists that the plaintiffs should have sought to reach such property by execution before proceeding against him.

This proposition involves an inquiry, for the solution of which we can gather but little aid from former adjudications.

The law fixes liability upon the indorser, when suit has been instituted and prosecuted against the maker and yielded no return, or when such proceedings being had, would yield nothing; and numerous decisions hold the return of *nulla bona* on execution against the maker, evidence of his insolvency; but the law is silent as to the place at which suit should be commenced, or the maker's insolvency exist for such purpose; and judicial construction has not yet settled that matter with any degree of accuracy. In the case of *Saunders* v. *O'Briant*, 2 Scam. 369, this Court say that "due diligence does not consist in merely instituting suit against the maker and prosecuting it to judgment. In order to show this diligence, it is clearly the duty of the assignee to prove *that within the county where the suit was commenced*, he had used all the means that the law had furnished him with, to collect the money." But whether the county where the maker in that case was sued, was also the county of his residence, does not appear. We feel called upon to define somewhat more specifically, the correlative rights and liabilities growing out of the relation of indorser and indorsee under our statute. In doing so, our endeavor shall be, to hold these parties to a strict performance of their respective undertakings;—diligence on the part of the indorsee, such as would characterize the course of every reasonable man seeking to protect his own interest, where no ulterior recourse upon any one else than the maker of the note remained to him, contingent upon his failure to collect the money from that quarter; on the part of the indorser, liability to pay the debt guarantied by him, and which his assignee's diligence could not secure from the maker. Nothing short

of this would, in our estimation, preserve the integrity of the contract.

But there must be some local bounds within which the diligence of the indorser is to be exercised, or the maker's insolvency to exist. Where are those bounds? Are they co-extensive with the State, or circumscribed by the limits of some particular county? Not the former certainly, otherwise, before resort could be had to the indorser, suit would necessarily have to be commenced in, or execution sent to, every county in the State. No such burthen rests upon the indorsee; but diligence or excuse for the want of it in some one county will ordinarily suffice. What county should that be? We feel no hesitancy in replying, the county of the maker's residence, if it be known to the indorsee. It is there, more than any where else, that he is presumed to own property, and if diligence by suit is used against him, or would prove unavailing there, liability is thereby fixed upon the indorser, without any necessity on the part of the indorsee to seek elsewhere, with an execution for his property; although if the maker has property elsewhere out of which the money could be made, and that fact be known to the indorsee, it would be otherwise. In such case, good faith on the part of the assignee would require an effort on his part to make such property available for the payment of his debt, before instituting suit against his assignor.

If, however, the residence of the maker be wholly unknown to the indorsee, he may elect to consider as the place of the maker's residence, the county where the note was executed, if he be found there for the purposes of the service of process upon him, returnable to the first term of Court held in said county, after the maturity of the note; or perhaps to a subsequent term, if in the meantime diligent but unsuccessful effort has been made to ascertain his place of residence. In such case the same results, as it regards their effect upon the rights of the one party, and the liability of the other, would follow as if the proceedings by suit had been had against the maker, or his insolvency established in the county of his residence.

Bestor *v.* Walker *et al.*

It may be proper here to remark, that in any case, the law requires diligence, not only in instituting, but also in prosecuting suit. It is, therefore, not sufficient that suit be commenced to the first term of the proper Court, but judgment must also be rendered at that term, or if not, such result must not grow out of the plaintiff's negligence. He must do every thing in his power to entitle him to judgment, as by filing his declaration and copy of the note sued on, &c., or he will be held guilty of *laches*. And so in order to charge the indorser on the ground of the maker's insolvency, it should appear, not simply that his liabilities exceed his means of paying, in which case he would be virtually insolvent, if payment of all his debts should be pressed; but in the language of the statute, that the institution of suit against him, would be wholly unavailing.

Testing the case under consideration by the principles above stated, the plaintiffs were clearly entitled to recover. It was proved upon the trial, that Law, the maker of the note, lived in Adams county in 1842, and for a year or two before the trial, which was in October, A. D. 1845, in Knox county; but whether he lived in Adams county, or where he lived on the 25th Dec. 1842, when the note matured, or afterwards, either when suit was commenced, or judgment rendered, does not appear; nor is there anything to show that the plaintiffs knew. But the note was executed in Peoria county, and on the 4th of January, A. D. 1843, ten days after it become due, suit was commenced upon it, to the next term of the Circuit Court holden in that county, and sent to Adams county for service, for the reasons, as E. N. Powell, the plaintiffs' attorney swears, that he and his partner, Mr. Bryan, had understood that the said Law lived in said county of Adams; but said summons was returned by the sheriff of said county of Adams not served, thus justifying the impression that said Law did not live there, and afterwards, on the 21st of March, 1843, a second writ in the same suit, and returnable to the same term of Court, was issued, and put into the hands of the sheriff of the aforesaid county of Peoria, and by him served upon said Law. Judg-

ment in said suit was rendered at said term of Court, and executions sued out thereon, (as has already been intimated,) strictly as alleged in the third count of the declaration in this case, and it is shown by the testimony of the aforesaid Powell, that the reason why execution was not sued out immediately upon the rendition of the judgment, was, that no property could on diligent search be found, belonging to said Law, in said county of Peoria, and that it was desirable to send execution when issued, to the county where said Law lived, but that it was not known to said witness, nor his partner, Mr. Bryan, where he did live, and further, that when they learned that said Law resided in Knox county, they caused the third execution to be sent there. On that execution, as has been stated, nothing was made, and the sheriff's return of *nulla bona* on it, established the said Law's insolvency in that county, as by similar proceedings it had been established in Peoria county. Nor can we, in the absence of all proof showing that the plaintiffs were apprised of the said Law's residence in the aforesaid county of Knox before the date of the *pluries fi. fa.* sent thither, hold them guilty of *laches* in not having it issued to that county at an earlier day, notwithstanding it appears from the evidence, that such proceedings might probably have resulted in making the whole, or a part of the money out of said Law's property. From this view of the subject it results, that the Circuit Court did not err in overruling the defendant's motion for a new trial, for the alleged reason, that the verdict was against the law and the evidence.

It is equally conclusive, that the opinion of the Court rejecting the testimony offered by the defendant, and objected to by plaintiff, was right; and that in the instructions given to the jury there was no such error, as to entitle the defendant to a new trial in the Court below, or a reversal of judgment here.

The testimony referred to as offered by the defendant and on plaintiffs' motion rejected by the Court, was "that in 1843, said Law exhibited to the witness (Joshua J. Moore,) title deeds to many tracts of land in the Military Tract; that Law was not a man who dealt in lands to which he had not a good

title; that he inherited from his father large quantities of land in the Military Tract; that two years ago (before October, 1845,) Mr. Pommey purchased two quarter sections of Law, and Law gave him good titles therefor; and that Law had the reputation of having much property." Now, saying nothing of the mode of proof sought to be made here of the said Law's title to real estate, the testimony was properly rejected because such property was, if it existed and was owned by said Law at all, out of Peoria county, and the plaintiffs are not shown to have known any thing about it.

The instructions complained of, as given to the jury at the plaintiffs' request, are as follows, to wit:

" 1. That it was not necessary for plaintiffs to issue an execution against Law into any county but Peoria, upon plaintiffs' judgment, but it was sufficient diligence to charge the indorser, if plaintiffs made diligent search and could find no property to levy on in Peoria county."

"2. That if the jury believe from the evidence that Law had property, yet if the plaintiffs did not know it, the defendant would be liable as indorser." ·

"3. That it was not necessary for the plaintiffs to search for property of Law out of the county of Peoria."

Each of these instructions would have been, by a slight modification, more strictly conformable to the principles hereinbefore laid down. The first should perhaps have been so framed as to exclude any conclusion that the plaintiffs need not have issued their execution to the county in which Law resided, if it had appeared from the evidence that he did not reside in Peoria county, and plaintiffs knew where he did reside; or to such county, if any, as Law had property in, if known to the plaintiffs. The question as to the existence of facts rendering the issuing of an execution to some other county than Peoria necessary, (on the assumption of the non-existence of which this instruction seems to have been based,) would thus have been submitted to the jury; but as from the evidence they would have been not only authorized, but required to find that such facts did not exist. The Court, in

assuming that they did not, and instructing the jury accord-
ingly, cannot be said to have erred to the prejudice of the de-
fendant so as to vitiate the judgment.

The second instruction, if intended to apply to the county
of Peoria, was clearly wrong, as that being the county for the
institution and prosecution of a suit, nothing would excuse
the want of diligence in that respect there, except the said
Law's entire destitution of property subject to execution.
The fact of his having property in that county, would conse-
quently interpose a fatal obstacle in the way of plaintiff's re-
covery, if they had relied not upon their efforts to subject such
property to the payment of their debt by legal coercion, but
upon their ignorance of its existence. The whole case, how-
ever, forbids the idea that this instruction was so intended by
the Court or understood by the jury, as the said Law had no
property in Peoria county, but had elsewhere. The instruc-
tion therefore applied to Law's property in other counties,
and so far as it was concerned, the plaintiffs had their re-
course upon the defendant, without seeking it if they did not
know of it, as it is proved they did not.

The third instruction, like the first, was based upon an as-
sumption warranted by the facts, but which, strictly speak-
ing, might probably have been left to the finding of the jury,
to wit: that Peoria county was the place of the said Law's
residence, or else that the plaintiffs did not know where he
resided.

If in this or either of the other instructions there is any
error, it is such that the defendant cannot in any wise be
prejudiced thereby, and consequently it will not affect the
validity of the judgment against him.

The only question remaining to be disposed of is that in-
volved in the second error assigned by the defendant, to wit:
that the Court erred in permitting the note to be read in ev-
idence to the jury.

The objection made to the introduction of this evidence,
upon the trial in the Circuit Court, was based upon the
ground, that the execution of the note by Law, (the maker)
was not proved, and the defendant by his counsel now insists

Bestor *v.* Walker *et al.*

that such preliminary proof was necessary to the admissibility of the evidence.

In this view of the subject, we do not concur. We cannot perceive that because the maker of the note stands to the other parties like the acceptor of a bill of exchange to drawer or indorser, and in a suit by the holder of a bill against the acceptor, the handwriting of the indorser must be proved, it therefore follows, as he assumes, that in an action by the holder against indorser, the handwriting of the maker, or acceptor should be proved. Such a conclusion is a *non sequitur* from the premises. Between the two cases there is no analogy. But as the maker of an indorsed note does stand like the acceptor of a bill, so in a suit against the maker by the indorsee, proof of the handwriting of the indorser would be necessary in this State, as it would under the *lex mercatoria* in a suit by indorsee against acceptor, were it not that such proof is expressly dispensed with by statutory provision except it be required by plea verified by affidavit. Rev. Stat. Ch. 83, § 59.

But there is no rule of law and never has been, requiring the indorsee of a note in a suit against the indorser of it to prove the execution of it by the maker. The indorser having negotiated and put it into circulation, exhibits a degree of assurance without a parallel, when he demands proof of its genuineness of the man to whom he has indorsed it. Neither reason nor law sanctions such a proceeding.

The judgment of the Circuit Court is affirmed with cost.*

*Judgment affirmed.*

---

* This case was argued and decided at the December term 1846, but the Opinion was not filed until the present term.